1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ROBIN E. JACKSON,                    No.  2:19-cv-00671-JAM-KJN PS

12                  Plaintiff,             FINDINGS AND RECOMMENDATIONS

13         v.                             (ECF Nos. 36, 37)

14    MARSHA J. JOSIAH, et al.,

15                  Defendants.

16

17

18         Before the court are plaintiff's motion to supplement her complaint and defendants'

19    motion to dismiss.[1]  (ECF Nos. 36, 37.)  Both motions were taken under submission without oral

20    argument, pursuant to Local Rule 230(g).  (ECF No. 40.)  The parties opposed each other's

21    motions, and defendants filed a reply in support of their motion to dismiss.  (ECF Nos. 41-43.)

22    For the following reasons, the undersigned recommends granting both motions and dismissing

23    plaintiff's complaint, as supplemented, for lack of subject-matter jurisdiction.

24    I.    **BACKGROUND**

25         This case is based entirely on the proceedings in and surrounding a state probate court

26    case, which has now concluded after unsuccessful appeals through the state courts and even to the

27    ───────────────────────

28    [1]      Because plaintiff is representing herself in this action, the case is referred to the
      undersigned for all pretrial proceedings pursuant to 28 U.S.C § 636 and Local Rule 302(c)(21).

                                      1

U.S. Supreme Court.  Because plaintiff's claims in this court rest on actions taken in the probate court case, the undersigned describes those proceedings in some detail.

Plaintiff, Robin Jackson, and defendant, Marsha Josiah, are sisters and were co-trustees of their late mother's trust, the Eddie Copeland Neighbors Trust.  (ECF No. 1 at 51 (Ex. B, Declaration of Trust).)  Marsha Josiah's husband, Claude Josiah, is the other named defendant in this case.  (ECF No. 1 at 1.)  Plaintiff Jackson and her husband (not named as a party here) have lived at the sisters' mother's house on 65th Avenue in Sacramento, California since July 2010.  (Id. ¶¶ 3, 31.)  In June 2015, their mother passed away, and the sisters became co-trustees of the Trust, which included the 65th Avenue home as Trust property.  (ECF No. 38 at 19-20 (Ex. B, Order After Trial).)[2]

**A.  The Probate Court Case**

In September 2017, defendant Marsha Josiah filed a petition in the Superior Court for the County of Sacramento seeking an accounting of the Trust and removal of plaintiff as co-trustee.  (ECF No. 1 ¶ 9; ECF No. 38 at 4, 17; ECF No. 36.1 at 14.)  The petition alleged that on August 3, 2015, two months after their mother's death, plaintiff Jackson unilaterally recorded a grant deed transferring the home from the Trust to herself and her husband—without paying Josiah for her half-share of interest in the property.[3]  (ECF No. 36.1 at 15-16.)  The petition asserted five causes of action, including claims that Jackson "engaged in self-dealing and breached her fiduciary duties by transferring title to the home and by residing in it without paying rent to the Trust."

---

[2]      A court may take judicial notice of proceedings in other courts and their related filings and documents.  See Porter v. Ollison, 620 F.3d 952, 955 n.1 (9th Cir. 2010) (taking judicial notice of docket in state court proceedings); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998).  The court therefore grants defendants' request for judicial notice of the probate court's docket in Case No. 34-2017-219410, its Order After Trial, and the decisions of the California state courts reviewing that order.  (ECF No. 38, Exs. A-D.)  The court also takes judicial notice of other related probate court filings appended to plaintiff's original complaint and proposed supplemental pleading.  (ECF Nos. 1 at 38 (Ex. A), 36.1 Exs. A-F.)  Plaintiff's objections to defendants' requests for judicial notice are addressed, and rejected, below.

[3]      A copy of the recorded and notarized grant deed is attached to plaintiff's complaint.  (ECF No. 1 at 72, 76 (Ex. D).)

1   Josiah v. Jackson, No. C089963, 2020 WL 6156418, at *2 (Cal. Ct. App. Oct. 21, 2020).  In the

2   petition, Josiah sought not only an accounting and sole trusteeship, but also an order (1) directing

3   the Jacksons to transfer the property back to the Trust, (2) requiring the Jacksons to vacate the

4   residence so that it could be sold, and (3) requiring plaintiff Jackson to pay the fair rental value

5   for the period in which she lived in the home after her mother's death.  (ECF No. 36.1 at 20-21.)

6          The case was assigned to Judge John P. Winn of the Superior Court's probate department

7   ("the probate court") and tried over two days.[4]  The first day of trial, November 29, 2018,

8   concerned title to the home.  (ECF No. 38 at 19.)  No transcripts of the trial were provided to this

9   court, but the California Court of Appeal, Third Appellate District, summarized the first day's

10  proceeding as follows:

11              After hearing testimony from Jackson, Josiah, and an appraiser called
            to address the fair rental value of the home, the court found the home
12          to be a Trust asset.  The court rejected Jackson's claim that there was
            an agreement to allow Jackson to transfer title of the home from the
13          Trust to Jackson and her husband. The court ordered that title be
            returned to the Trust, and continued the remainder of the trial to
14          March 22, 2019.

15  Josiah, 2020 WL 6156418, at *2.  Judge Winn's final order recounted the first day's proceeding

16  like this:

17
18              On August 3, 2015, Respondent [Jackson] recorded a deed
            purporting to transfer the home to "Robin Jackson and Demetri
19          Jackson as his/her sole and separate property".  Based upon the
            testimony presented at trial, it was abundantly clear that [Josiah]
20          never made any oral or written representation that she was giving up
            her interest in the 65th Avenue home to her sister.  The Court found
21          [Josiah]'s testimony to be clear, concise, articulate and forthcoming.
            From observing [Josiah], it became quite apparent that she took no
22          joy whatsoever in bringing a family disagreement into a public
            forum.  On the other hand, it was considerably more difficult to track
23          the testimony of [Jackson].

24              Based upon the Court's assessment of the credibility of the witnesses
25          and a review of the exhibits presented, the Court found the home to
            be a trust asset.
26

27  ─────────────────
    [4]      Plaintiff Jackson represented herself in the probate action, while defendant Josiah (the
28  petitioner there) proceeded with counsel.

1     (ECF No. 38 at 20.)

2          In concluding the first day of trial, Judge Winn also "ordered that the home be appraised

3     and retitled as a trust asset." (Id.)  He set the second day of trial for March 22, 2019, and set a

4     status conference for February 19, 2019, to confirm that the retitling and appraisal were

5     completed.  (Id.)

6          At the February 19th status conference, which was not reported, "it was immediately clear

7     that [plaintiff Jackson] was unwilling to cooperate in relation to the appraisal or the correction to

8     the deed."  (Id.)  Accordingly, Judge Winn ordered "that Jackson be suspended as a co-trustee,

9     that the home immediately be retitled in the name of the Trust, and that an appraisal of the home

10    be completed by March 12, 2019."  Josiah, 2020 WL 6156418, at *2.  (ECF No. 1 ¶ 100; see ECF

11    No. 38 at 11 (ROA #133); id. at 20.)  Jackson filed several declarations, a motion to vacate, and a

12    motion for reconsideration regarding her suspension as co-trustee.  (ECF No. 1 ¶ 106; see ECF

13    No. 38 at 10-11 (ROA #134-140).)

14         "When Jackson refused to sign a grant deed transferring title back to the Trust, the court

15    granted an ex parte application [by Josiah] authorizing the clerk to sign the deed as an elisor."

16    Josiah, 2020 WL 6156418, at *2.  (See ECF No. 38 at 10 (ROA# 144-146).)  On March 7, 2019,

17    pursuant to that order, the Clerk of the Superior Court executed a grant deed transferring the

18    property back to the Trust on behalf of the Jacksons.  (ECF No. 1 at 74-75 (Ex. D).)

19         On March 22, 2019, the trial resumed.  Before taking testimony, Judge Winn ruled on

20    Jackson's motions for reconsideration of the order suspending her as a trustee.  (ECF No. 38

21    at 21.)  He denied the motions because they were "untimely and lacked substantive merit."  (Id.

22    (noting that Jackson had by then filed 22 separate declarations).)  At that second and final day of

23    trial, Judge Winn took testimony and evidence on the value of the home and its fair rental value;

24    and he permitted to Jackson to later file proof of the mortgage and maintenance expenses she had

25    been covering.  (Id.)  Plaintiff did so in a timely "23rd Declaration."  (ECF No. 36.1 at 28-29

26    (Ex. C).)

27         After issuing a tentative decision in April and hearing additional argument in June, Judge

28    Winn issued a final Order After Trial on June 25, 2019.  (ECF No. 38, Ex. B; see id. at 21.)

Therein, Judge Winn ordered, as relevant, that (1) Jackson was removed as co-trustee of the Trust, (2) the home was a Trust asset, (3) Jackson owed nearly $80,000 for the fair rental value of the home from 2015 to 2019, reduced by a nearly equivalent credit for the expenses she had personally paid for its upkeep, and (4) while Jackson continued to occupy the home, rent costs (offset by credit toward rent costs) would continue to accrue going forward.  (Id. at 23.)  The court declined to order Jackson and her husband to vacate the residence, however, stating that such relief would have to be "pursued in a different forum."  (Id.)  Judge Winn explained somewhat opaquely that Probate Code § 850(a)(3)(A), the statute under which petitioner Josiah brought her petition, did "not support this contention."  (Id.)  Judge Winn also encouraged the parties to sell the home to a third party or to have one party buy out the other's interest in the home; but he declined to order the home to be sold because plaintiff Jackson and her husband still lived in it.  (Id. at 24.)

At various points while the probate case was ongoing, plaintiff Jackson filed formal complaints with the State Commission on Judicial Performance "regarding [Judge Winn]'s conduct in the courtroom" during her trial and hearings.  (ECF No. 1 ¶ 101.)

Plaintiff appealed the probate court's decision to the California Court of Appeal, Third Appellate District, which affirmed Judge Winn's judgment.  Josiah v. Jackson, No. C089963, 2020 WL 6156418 (Cal. Ct. App. Oct. 21, 2020).  In that appeal, Jackson "challenge[d] the trial court's implied finding that she breached her fiduciary duties and engaged in self-dealing by transferring title of the home from the Trust to herself (and her husband) and occupying the home for several years without paying rent to the Trust."  Id. at *3.  Although the Court of Appeal found Jackson's brief "difficult to follow," it understood her to be generally arguing that "the evidence does not support a finding that her conduct breached any fiduciary duties or caused any personal damages to Josiah."  Id.  The Court of Appeal concluded that Jackson had "forfeited her claims by filing an inadequate brief and record," and was therefore "compelled to rely on the presumption of correctness and affirm the judgment."  Id. at *1, 3.

The California Supreme Court denied plaintiff's petition for review in December 2020 (ECF No. 38 at 37), and the United States Supreme Court later denied her request for certiorari,

1  Jackson v. Josiah, No. 20-7165, 2021 WL 1520894, at *1 (U.S. Apr. 19, 2021).

2  **B.  The Instant Complaint**

3  On April 19, 2019, two months prior to the probate court's Order After Trial and three

4  days before the probate court announced its tentative decision, plaintiff filed her federal

5  complaint with this court.  (ECF No. 1.)  The complaint is styled as a "Complaint for Damages

6  and Injunctive Relief For Defendants['] Partic[i]pation in the Violations of the Federal Racketeer

7  Influenced and Corrupt Organizations Act."[5]  (Id. at 1.)  The complaint names only two

8  defendants—Marsha Josiah and her husband, Claude Josiah[6]—but it repeatedly attacks conduct

9  by Josiah's probate attorney and Judge Winn of the probate court as well.

10  The gist of plaintiff's complaint is that, by bringing the probate petition, defendants

11  "fraudulently filed" an "untrue complaint" in order to "defraud [plaintiff] of money[ ] and inherit

12  trust property."  (See, e.g., id. at 3, 30.)  Plaintiff identifies numerous allegations in Josiah's

13  probate petition as "[n]ot true," and she consistently alleges that Josiah verbally told her in July

14  2015 to put her own name on the property title (and not Josiah's name).  (Id. at 4-5, 7, 10-12, 31.)

15  Plaintiff claims that this oral representation was part of an elaborate set-up so that Josiah could

16  then, two years later, sue her for the property in probate court.  (Id. at 12-13, 32.)  According to

17  plaintiff, in the probate action Josiah did not "prove" that plaintiff "wasted money, embezzled

18  money, mismanaged or Committed fraud on our mother's estate," or that plaintiff "committed

19  fraud, breach of fiduciary duty, or breach of the trust contract, or anything, other than the trust

20  property title being in [plaintiff's] name"—which Josiah allegedly verbally approved in 2015.

21  (Id. ¶¶ 59, 63.)

22  Most of plaintiff's allegations appear under a heading that reads "Defendants Act to

23  Further the Scheme, and RICO Defendants Act in Concert with Defendant's attorney and probate

24  court To Defraud Plaintiffs."  (Id. at 10.)  After describing Josiah's alleged verbal approval of the

25  

26  [5]      The complaint caption also references the False Claims Act, which prohibits defrauding the federal government, but the complaint makes no further mention of the FCA.

27  

28  [6]      Although Claude was not a party to the probate petition, plaintiff claims that he "fully supported" Marsha Josiah's decision to file the petition.  (ECF No. 1 at 6.)

title change, plaintiff describes in detail her version of events throughout the probate proceeding. (Id. at 13-29.)  She objects that Josiah "swore to and allowed . . . false allegations to proceed in [the probate court] which is known for its racketeering practices."  (Id. ¶ 57; see id. ¶¶ 54, 123.) She contests the probate petition's claims and complains that Judge Winn ignored certain evidence and topics.  (Id. ¶¶ 64, 69-72, 75.)  She further claims that it caused her "major duress" to have to do Trust accountings without any proof of her wrongdoing, and generally objects to having to defend herself against the petition.  (Id. ¶¶ 80, 82-83.)  Plaintiff alleges that Josiah did not follow proper evidentiary procedures at the first day of trial, and objects to the trial court's several adverse orders to transfer the residence back to the Trust.  (Id. ¶¶ 88-100, 104-09.)

Plaintiff's complaint asserts five purported causes of action—at least two of which are really predicate acts asserted in support of the overall RICO claim.  The first and only federal cause of action is a RICO claim, under 18 U.S.C § 1962(c), alleging that defendants were co-conspirators in the scheme to "defraud" plaintiff by filing the original "untrue" petition in the probate court. (ECF No. 1 at 30.)  Plaintiff's second cause of action is for "malicious prosecution."  (Id. at 30.)  Plaintiff claims that defendants intentionally filed "false claim(s) to maliciously pursue claims . . . brought without probable causes."  (Id.)  Further, defendants allegedly "conspired with the [probate court] and [Josiah's probate attorney] to strong arm the trust property" away from her, and "falsely accused" her for 19 months "without having to prove the original Petition . . . ."  (Id. at 31.)

Under a heading for her "Third Claim for Relief," plaintiff asserts an "extortion plan" between defendants, their probate attorney, and the probate court to "illegally obtain trust property" from her.  (Id. at 31-32.)  Under a heading for her "Fourth Claim for Relief Mail Fraud," plaintiff alleges that defendants and their attorney violated 18 U.S.C. §§ 1341 & 1343 by "[e]lectronic filing through the United States Mail service court papers containing false and misleading statements and information" to further their fraud scheme.  (Id. at 32-33.)  Plaintiff identifies three instances of defendants' probate attorney e-mailing, mailing, or filing "false" or "incomplete" documents in connection with the probate case.  (Id. at 33.)  Finally, as her "Fifth Claim for Relief," plaintiff alleges that defendants committed fraud in violation of Cal. Civ. Code

1  § 3294 by "fraudulently filing" their state court suit, and that defendants "[were] setting [plaintiff]
2  up the entire time."  (Id. at 34-35.)

3      Plaintiff's prayer requests three forms of relief.  First, she asks the court to award "a
4  temporary restraining order and a preliminary injunction[]" to "avert the likelihood of
5  [d]efendants' . . . irreparable injury or prohibit the illicit conduct described [in the complaint]
6  during the pendency of this action and to preserve the possibility of effective final relief."  (Id.
7  at 35.)  Second, plaintiff seeks what she terms a "declaratory judgment" to "[o]rder RICO
8  [d]efendants, Marsha J. Josiah and Claude Elton Josiah, to cease and desist from violating
9  18 U.S.C. § 1964."  (Id.)  And third, plaintiff asks the court to enter judgment against defendants
10  "in an amount equal to three times the amount of damages" plaintiff "sustained because of
11  [defendants'] actions, plus a civil penalty for each violation of 18 U.S.C. § 1964."  (Id. at 35-36.)

12      **C.  Proceedings in This Court**

13      Plaintiff filed her federal complaint on April 19, 2019, and was granted leave to proceed
14  in forma pauperis.  (ECF Nos. 1, 3.)  After some delays in service by the U.S. Marshal,
15  defendants responded to the complaint by moving to stay the case under the Colorado River
16  abstention doctrine, citing plaintiff's then-pending state-court appeal of the probate court's
17  decision.  (ECF Nos. 10-11, 17-18.)  See Colo. River Water Conservation Dist. v. United States,
18  424 U.S. 800, 817 (1976).

19      In March 2020, after a hearing and full briefing, the undersigned granted the stay request,
20  finding that exceptional circumstances warranted Colorado River abstention until the state appeal
21  was concluded.  (ECF No. 23 at 10.)  In granting the stay, the undersigned made several
22  observations relevant to the present motion to dismiss.  First, the court noted that plaintiff was
23  attempting to "circumvent and reverse" the probate court's judgment by "essentially ask[ing] [this
24  court] to review the decision and procedures of the probate proceeding," which would be the
25  "primary inquiry of the state appeal."  (Id. at 7-8.)  Further, the court described plaintiff's
26  complaint as "a facially contrived attempt to evade the state court's judgement," reactively filed
27  upon realizing that "an adverse ruling in the probate court was imminent."  (Id. at 10.)  Therefore,
28  the court found the action was "a de facto appeal," warranting abstention.  (Id.)

In November 2020, the court briefly lifted the stay after being notified that the California Court of Appeal had affirmed the probate court's judgment; but it then re-imposed the stay upon learning that plaintiff was seeking review in the Supreme Court of California.  (ECF Nos. 25, 28.)  In January 2021, after the state supreme court denied review, the court lifted the stay for good.  (ECF No. 30.)  The parties submitted status reports addressing the standard scheduling order matters.  In the section describing the relief sought in her action, plaintiff's January 29, 2021 status report stated simply: "Plaintiff wishes to remain in the inherited home without any costs attached to [the] residence by the courts."  (ECF No. 32 at 3.)  Based on the status reports, the court identified the case as one appropriate to resolve on the pleadings, noting that plaintiff's claims were likely barred by the Rooker-Feldman doctrine and that defendants planned to move to dismiss.  (ECF No. 33 at 2.)  Accordingly, the court set a preliminary deadline for defendants to bring any motion to dismiss.  (Id. at 3.)

### 1.  Plaintiff's Motion to Supplement

On February 23, 2021, plaintiff filed a motion to supplement the pleadings in her complaint under Rule 15(d) of the Federal Rules of Civil Procedure.  (ECF No. 34.)  Because plaintiff did not notice the motion for hearing and because she did not clearly identify her proposed supplemental allegations, the court denied the motion without prejudice.  (ECF No. 35.)  On March 5, 2021, plaintiff re-filed her motion to supplement, which is now before the court.  (ECF No. 36.)  Plaintiff's motion states that her proposed supplemental pleading "maintain[s] the same counts and allegations against the same defendants from the original complaint, but accounts for the significant factual and procedural developments that have occurred since the original complaint was filed on April 19, 2019."  (Id. at 3.)

Plaintiff's motion states that her proposed supplemental pleading is attached as "Exhibit A" (id.), and indeed the Exhibit A to plaintiff's supporting declaration is entitled "Supplemental Petition" (ECF No. 36.1 at 6).  In substance, however, Exhibit A reads instead as a brief in support of plaintiff's motion to supplement.  Nevertheless, on pages 4 and 5 of the brief/exhibit, plaintiff describes four "pivotal events" purportedly transpiring after she filed her federal complaint; and at the end of the brief/exhibit (on page 6) she includes a specific request

9

1    for relief, echoing her earlier status report:  "Plaintiff wish is to remain in the trust property

2    residence without any cost attached by the courts."  (Id. at 9-11.)  Plaintiff's supporting

3    declaration looks more like a traditional supplemental pleading.  (ECF No. 36.1 at 1-3.)  Therein,

4    plaintiff also describes several events from the probate litigation, mostly the same as those

5    described in Exhibit A.  The court construes the three relevant pages of plaintiff's Exhibit A (ECF

6    No. 36.1 at 9-11) and plaintiff's supporting declaration (ECF No. 36.1 at 1-3) as, together,

7    constituting plaintiff's proposed supplemental pleading.

8            Taken together, plaintiff proposes adding the following allegations and exhibits to her

9    complaint (paraphrased by the court for clarity):

10           i.    Defendants willingly participated in "the conduct" by consenting to the September 21,

11                 2017 filing of a frivolous lawsuit for the purpose of defrauding plaintiff, as evidenced

12                 by the probate petition, attached as Exhibit B.  (ECF No. 36.1 at 1 (¶ 2), 14-21.)

13          ii.    On March 25, 2019, plaintiff filed with the probate court her 23rd Declaration,

14                 attached as Exhibit C.  (ECF No. 36.1 at 9.)  Attached to the 23rd Declaration was a

15                 letter from the mortgage lender, dated the same day (March 25, 2019), addressed to

16                 the sisters' mother—not to plaintiff.   The mortgage lender's letter is also attached to

17                 plaintiff's present Exhibit C.  (ECF No. 36.1 at 25.)  Plaintiff alleges that this letter

18                 shows that defendants intentionally misrepresented that plaintiff's name was on the

19                 mortgage, to benefit themselves.  (ECF No. 36.1 at 2 (¶ 3).)

20          iii.   On April 22, 2019, plaintiff filed with the probate court her 27th Declaration, which

21                 allegedly prompted the probate court to (i) issue its tentative decision immediately

22                 afterward, and (ii) mail to plaintiff a minute order sua sponte setting a further hearing

23                 for June 7, 2019.  (ECF No. 36.1 at 9-10.)  Plaintiff attaches as Exhibit D a copy of a

24                 May 24, 2019 minute order by the probate court setting a June 7th hearing on "issues

25                 raised in any pleadings filed on or after April 22, 2019," the date the probate court

26                 issued its tentative decision.  (ECF No. 36.1 at 27.)

27          iv.    In support of her purported Mail Fraud claim, plaintiff alleges "participation by

28                 Marsha Josiah's silence" on that minute order being mailed to plaintiff to set the

                                                     10

June 7th hearing "with the outcome of hearing only to get plaintiff's name off the grant deed to force the sale of the Trust home without support of any proof of what occurred in the hearing caused by Plaintiff['s] alleged actions." (ECF No. 36.1 at 2 (¶ 4).)

v.  On June 25, 2019, the probate court issued its Order After Trial, attached as Exhibit F. (ECF No. 36.1 at 10, 38-43.)  In support of her Malicious Prosecution claim, plaintiff highlights the probate court's statement that Probate Code § 850(a)(3)(A) did not support Josiah's request to order plaintiff to vacate the Trust property; she alleges that this portion of the order confirms defendants' petition was fraudulent and frivolous. (Id. at 3 (¶ 6).)

vi.  On June 28, 2019, plaintiff filed with the probate court a Request for Statement of Decision, attached as Exhibit E, in connection with her "RICO scheme discovery." (Id. at 2 (¶ 5).)  The Request for Statement of Decision lists 43 "Controverted Issues" requesting explanations of the probate court's handling of plaintiff's motions and the factual basis for its conclusions and orders.  (Id. at 29-36.)

vii.  Plaintiff "respectfully requests the following relief:  Plaintiff wish is to remain in the trust property residence without any cost attached by the courts." (Id. at 11.)

Defendants oppose the motion to supplement, arguing that the proposed supplement does not overcome the Rooker-Feldman obstacle and does not substantively add to the existing allegations. (ECF No. 42 at 1-2.)

2.  Defendants' Motion to Dismiss

In compliance with the court's order, defendants moved to dismiss on March 10, 2021. (ECF No. 37.)  Defendants argue that the complaint should be dismissed because (1) under the Rooker-Feldman doctrine, the court lacks subject-matter jurisdiction to review the judicial decisions in the underlying probate case, and (2) the complaint fails to state a claim pursuant to

////

////

////

11

1    Federal Rule of Civil Procedure 12(b)(6).[7]  (Id. at 2.)  Plaintiff opposes the motion to dismiss,[8]

2    arguing that she is not attempting to appeal the probate court's decision which was not final

3    before she brought this suit, and that her complaint states a claim.[9]  (ECF No. 41.)

4          The court took both motions under submission without argument (ECF No. 40), and now

5    recommends granting them both, thereby dismissing plaintiff's complaint as supplemented.

6    **II.    LEGAL STANDARD**

7          Federal courts are courts of limited jurisdiction and do not have the power to adjudicate

8    cases for which they lack subject-matter jurisdiction.  A federal district court generally has

9    jurisdiction over a civil action when (1) a federal question is presented in an action "arising under

10   the Constitution, laws, or treaties of the United States," or (2) there is complete diversity of

11

---

12   [7]     Defendants cite only Rule 12(b)(6) in their motion to dismiss, but (as defendants
     acknowledge) the Rooker-Feldman doctrine governs whether a court lacks subject-matter
13   jurisdiction.  Thus, the court considers the motion as though it were brought under Rule 12(b)(1)
     as well.  See Hardy v. Cty. of El Dorado, No. Civ. S-07-0799-RRB-EFB, 2008 WL 268966, at *3
14   n.15 (E.D. Cal. 2008) ("[T]he question of whether the court lacks subject matter jurisdiction
     under the Rooker-Feldman doctrine should have been raised through a Rule 12(b)(1) motion to
15   dismiss for lack of subject matter jurisdiction, not a Rule 12(b)(6) motion to dismiss for failure to
16   state a claim . . . .").

17   [8]     Plaintiff also opposes defendants' requests for judicial notice—granted above in
18   footnote 2—in two respects.  First, plaintiff objects that defendants' RJN Exhibit A, a copy of the
     probate court docket, does not include the later docket entries following her state-court appeal.
19   (ECF No. 41 at 4.)  While true, that is not grounds to deny judicial notice of the probate court
     docket—especially because plaintiff ascribes no importance to those later docket entries, and the
20   court is able to electronically view the full probate court docket through the Sacramento Superior
     Court's public case access system.
21          Plaintiff also argues that the court should "strike the request for judicial notice . . . of
22   probate records that do not exist," referencing two of defendants' factual summary statements
     from their brief in support of the motion to dismiss.  (Id. at 5.)  Although this argument is difficult
23   to follow, plaintiff appears to be challenging defendants' characterization of the probate court
     proceedings.  (See ECF No. 37.1 at 2.)  Whether or not defendants correctly summarize the
24   proceedings, the court records from those proceedings are proper for judicial notice.
     Accordingly, the court rejects plaintiff's objections to defendants' requests for judicial notice.
25

26   [9]     Plaintiff also describes two personal encounters with the undersigned in the courthouse
     and at the February 2020 hearing on the motion to stay.  (ECF No. 41 at 8-9.)  Plaintiff does not
27   request judicial disqualification, nor do the brief interactions alleged support disqualification.
     However, the undersigned assures plaintiff that these findings and recommendations are made
28   purely based on the law as applied to the facts of this case.

1    citizenship and the amount in controversy exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332(a).

2    The court must dismiss a case if, at any time, it determines that it lacks subject-matter

3    jurisdiction.  Fed. R. Civ. P. 12(h)(3).

4         Federal Rule of Civil Procedure 12(b)(1) allows a party, by motion, to assert the defense

5    of "lack of subject-matter jurisdiction."  A Rule 12(b)(1) jurisdictional attack can be either facial

6    or factual.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the challenger

7    asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

8    jurisdiction.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).[10]  In deciding

9    a facial Rule 12(b)(1) motion like the present one, the court "must assume the allegations in the

10   complaint are true and draw all reasonable inferences in the plaintiff's favor."  Ryan v. Salisbury,

11   382 F. Supp. 3d 1062, 1073 (D. Haw. 2019) (citing Wolfe v. Strankman, 392 F.3d 358, 362 (9th

12   Cir. 2004)).  However, the plaintiff bears the burden of establishing that subject-matter

13   jurisdiction exists.  See United States v. Orr Water Ditch Co., 600 F.3d 1152, 1157 (9th Cir.

14   2010).[11]

15        As to plaintiff's motion, under Rule 15(d), "the court may, on just terms, permit a party to

16   serve a supplemental pleading setting out any transaction, occurrence, or event that happened

17   after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  This rule serves as a

18   corollary to Rule 15(a) which permits filing an *amended* complaint to replead or add facts or

19   claims arising prior to or contemporaneously with the allegations in the original complaint.

20   Supplementation under Rule 15(d) is generally favored because it promotes judicial economy and

21   convenience.  See Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988) (goal of Rule 15(d) is to

22   promote judicial efficiency by avoiding "the cost, delay and waste of separate actions, which

23   must be separately tried and prosecuted").

24        "The legal standard for granting or denying a motion to supplement under Rule 15(d) is

---

26   [10]   By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by
     themselves, would otherwise invoke federal jurisdiction.  Safe Air, 373 F.3d at 1039.

28   [11]   Because the undersigned agrees with defendants that the court lacks subject-matter
     jurisdiction in this case, no explanation of the Rule 12(b)(6) standard is needed.

1   the same as for amending one under 15(a)."  <u>Paralyzed Veterans of America v. McPherson</u>, No. C

2   06-4670-SBA, 2008 WL 4183981, at *26 (N.D. Cal. Sept. 9, 2008).  The typical five factors

3   governing amendment—and by extension, supplementation—are (1) undue delay, (2) bad faith of

4   the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing

5   party, and (5) futility of the amendment.  <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  In

6   addition, courts consider (6) whether permitting supplementation would further the goal of

7   Rule 15(d), which is to promote judicial efficiency.  <u>See</u> <u>Planned Parenthood of Southern Ariz. v.</u>

8   <u>Neely</u>, 130 F.3d 400, 402 (9th Cir. 1997).  Of these factors, "it is the consideration of prejudice to

9   the opposing party that carries the greatest weight."  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316

10   F.3d 1048, 1052 (9th Cir. 2003).  Absent prejudice or a "strong showing" of any other <u>Foman</u>

11   factor, there is a presumption in favor of granting leave to supplement.  <u>Id.</u>; <u>see</u> <u>LaSalvia v.</u>

12   <u>United Dairymen of Arizona</u>, 804 F.2d 1113, 1119 (9th Cir. 1986) ("Motions to amend pursuant

13   to Rule 15(d) should be granted unless undue prejudice to the opposing party will result."

14   (cleaned up)).

15   **III.**    <u>**DISCUSSION**</u>

16      **A. Plaintiff's Motion to Supplement**

17       Because plaintiff filed her complaint in this court two months before the probate court

18   issued final judgment on her sister's petition, plaintiff seeks to add further allegations regarding

19   the end of the probate court proceedings, as detailed above.  The court generally agrees with

20   defendants' estimation that these allegations add little of substance, and that (for the reasons

21   discussed in the next section) they do not eliminate the <u>Rooker-Feldman</u> problem.  However,

22   defendants identify no prejudice in granting the motion to supplement, and the court sees none in

23   the absence of any scheduling deadlines—and especially considering the following

24   recommendation to dismiss the complaint as supplemented.  <u>See</u> <u>Eminence Capital</u>, 316 F.3d at

25   1052 (prejudice to the opposing party carries the greatest weight in Rule 15(d) analysis); <u>cf.</u> <u>Lyon</u>

26   <u>v. U.S. Immigr. & Customs Enf't</u>, 308 F.R.D. 203, 214 (N.D. Cal. 2015) ("Prejudice may be

27   established in a variety of ways, such as where a motion to amend is made after the cutoff date for

28   such motions, or when discovery has already closed or is about to close.").

1    Plaintiff's proposed supplemental allegations are clearly related to the events of the

2  original complaint, as they describe further proceedings in the same probate suit.  It would

3  promote judicial efficiency to permit plaintiff to assert all of her allegations in support of her

4  claims arising from that suit in this action—rather than filing a new separate suit.  See Keith, 858

5  F.2d at 473.

6    Although some of plaintiff's allegations and attached exhibits describe or reflect events

7  *preceding* the filing of her federal complaint on April 19, 2019, that is not reason to deny

8  plaintiff's motion outright, because those allegations and attachments would be permitted under

9  Rule 15(a).  See Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1510 (3d ed.) (if supplemental

10  pleading "deals with events that occurred before the filing of the original pleading and in reality is

11  an amended pleading, . . . the court should then determine the merits of the application as if it had

12  been properly made under Rule 15(a)").

13    Accordingly, the undersigned recommends granting plaintiff's motion and ordering

14  plaintiff's original complaint be supplemented to add the allegations and requests for relief

15  described in paragraphs (i)-(vii) above.

16  **B.  Defendants' Motion to Dismiss**

17    Turning to the more complex motion, defendants move to dismiss this action primarily for

18  lack of subject-matter jurisdiction under the Rooker-Feldman doctrine.[12]  (ECF No. 37.)  "[T]he

19  Rooker-Feldman doctrine bars suits 'brought by state-court losers complaining of injuries caused

20  _____

21  [12]    Because the court agrees that Rooker-Feldman bars this action, it does not address
defendants' alternative argument that the complaint also fails to state a claim under Rule 12(b)(6).

22  Having opted to address only the 12(b)(1) portion of defendants' motion, there is also no need to
address plaintiff's short argument that defendants' 12(b)(6) motion to dismiss is untimely.  (See

23  ECF No. 41 at 2.)  However, in the interest of correcting plaintiff's legal misunderstanding, the
court briefly addresses it.  Plaintiff is correct that Rule 12(b)(6) motions "must be made before

24  pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  But plaintiff misunderstands
the law when she argues that relief under Rule 12(b)(6) is foreclosed because defendants have not

25  yet filed an answer to the complaint.  It is precisely because defendants did not answer the
complaint that their Rule 12(b)(6) motion is procedurally proper.  See Elvig v. Calvin

26  Presbyterian Church, 375 F.3d 951, 954 (9th Cir. 2004) ("A Rule 12(b)(6) motion must be made
*before* the responsive pleading.").  In any event, here, the court is treating defendants' motion as a

27  12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a defense that can be raised at
any time—unlike a 12(b)(6) motion to dismiss for failure to state a claim.

28  

15

by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2010) (quoting Exxon Mobil Corp. v. Saudi Basic Indust. Corp., 544 U.S. 280, 284 (2005).  The doctrine applies when "the action contains a forbidden de facto appeal of a state court decision." Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013).  "A de facto appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.'" Id. (citing Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003)).  If the federal action constitutes a de facto appeal, district courts are barred from deciding not only the issues decided by the state court, but also any other issues that are "inextricably intertwined" with an issue resolved by the state court's decision. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1142 (9th Cir. 2004) (citing Noel, 341 F.3d at 1158).

      1.  Rooker-Feldman Applies to the Complaint as Supplemented

The first step in the Rooker-Feldman analysis under Ninth Circuit law is to identify any claims that constitute de facto appeals of a state court's judgment.  This raises a threshold issue, however, that defendants—and indeed, the court in its previous passing references to Rooker-Feldman issues with the case—overlooked.

The Rooker-Feldman doctrine applies only to plaintiffs "complaining of injuries caused by state-court *judgments rendered before the district court proceedings commenced* and inviting district court review and rejection of those judgments.'" Carmona, 603 F.3d at 1050 (quoting Exxon Mobil, 544 U.S. at 284) (emphasis added); see Rutter Group Prac. Guide Ch. 2E-11 § 2:4960 ("If the federal action is filed before a state court judgment is rendered, the parallel state action does not affect concurrent federal subject matter jurisdiction," although comity or abstention doctrines apply instead).  As plaintiff is quick to point out, she filed this federal suit before the probate court issued its final judgment on June 25, 2019.  (ECF No. 36.1 at 10; ECF No. 41 at 9.)  It would seem, therefore, that she could not be complaining of injuries caused by a state-court judgment because no such judgment existed when she filed her original complaint on April 19, 2019.

16

1    Two facets of this case, one procedural and one substantive, bring the <u>Rooker-Feldman</u>

2    bar into play, nonetheless.  First and most critically, plaintiff's supplemental pleading filed on

3    March 5, 2021, post-dates the state-court judgment—and all of the ensuing reviewing court

4    decisions, save the denial of certiorari by the U.S. Supreme Court—and expressly contests the

5    terms of that judgment.  To the extent plaintiff's original complaint was not <u>Rooker-Feldman</u>

6    barred (for lack of a final state-court judgment), the complaint *as supplemented* now is.

7    Although supplemental pleadings permitted through Rule 15(d) do not supersede the

8    original complaint like an amended complaint would, the supplemental pleading "is subject to the

9    same defenses and objections as if its contents were being set forth in a new action."  Wright &

10   Miller, 6A Fed. Prac. & Proc. Civ. § 1505 (3d ed.).  According to binding circuit precedent, when

11   supplementation is allowed, that "supplemental pleading [becomes] the operative pleading in the

12   case on which subject-matter jurisdiction must be based."  <u>Northstar Fin. Advisors Inc. v. Schwab</u>

13   <u>Invs.</u>, 779 F.3d 1036, 1047 (9th Cir. 2015), <u>as amended on denial of reh'g and reh'g en banc</u>

14   (Apr. 28, 2015); <u>accord</u> <u>Rockwell Int'l Corp. v. United States</u>, 549 U.S. 457, 473-74 (2007)

15   ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint,

16   courts look to the amended complaint to determine jurisdiction.").  This rule makes sense because

17   the purpose of Rule 15(d) is to allow a plaintiff to assert all related allegations in the existing

18   action instead of having to voluntarily dismiss the action and file a separate complaint as a brand-

19   new action.  <u>Northstar</u>, 779 F.3d at 1044 ("Rule 15(d) . . . circumvents 'the needless formality and

20   expense of instituting a new action when events occurring after the original filing indicated a right

21   to relief.'" (quoting Wright & Miller § 1505)).

22   As a result, courts must consider their subject-matter jurisdiction afresh upon accepting a

23   supplemental pleading—as they would upon receiving a newly filed action.  <u>See</u> <u>N. Alaska Env't</u>

24   <u>Ctr. v. U.S. Dep't of the Interior</u>, 983 F.3d 1077, 1084 n.5 (9th Cir. 2020) (jurisdiction is

25   something courts must consider sua sponte).  The above rule was announced in cases where the

26   amended or supplemental pleading *cured* a jurisdictional defect, rather than creating one.  <u>See</u> <u>id.</u>

27   (district court had subject-matter jurisdiction based on <u>Northstar</u>, "which allows us to rely on an

28   amended complaint that satisfies the jurisdictional defects, if any, of an original complaint");

17

Northstar, 779 F.3d at 1044-48 (holding that supplemental pleadings can eliminate jurisdictional issues based on events after original complaint was filed).  But the undersigned sees no reason that the rule should not apply equally in both directions.

In reaching its conclusion in Northstar, the Ninth Circuit quoted Federal Circuit case law that "the proper focus in determining jurisdiction are 'the facts existing at the time the complaint *under consideration* was filed."  779 F.3d at 1044 (quoting Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1337 Fed. Cir. 2008) (emphasis in Prasco) (holding that, with the district court having accepted the amended complaint, the facts alleged in the amended complaint form the basis for the court's review).  By this reasoning, assuming the court adopts the undersigned's recommendation to accept plaintiff's supplemental pleading, it is the complaint as supplemented that forms the basis of the court's jurisdictional analysis.  See Northstar, 779 F.3d at 1047 (noting that the "supplemental pleading [became] the operative pleading in the case on which subject-matter jurisdiction must be based").

As supplemented, plaintiff's complaint runs into the Rooker-Feldman bar because it complains of injuries caused by the probate proceedings which by then were long concluded, and appealed to finality.  As will factor strongly in the next portion of the analysis, plaintiff's supplemental pleading specifically requests as relief "to remain in the trust property residence without any cost attached by the courts."  (ECF No. 36.1 at 11.)  The costs complained of were "attached" by the probate court in its final judgment rendered before plaintiff's supplemental pleading.  (See ECF No. 38 at 22-23 (ordering that rent costs and credit continue to accrue while plaintiff occupies the home, an $850 net monthly obligation).)  Accordingly, the Rooker-Feldman doctrine applies, and for the reasons explained below, the undersigned concludes that the court lacks subject-matter jurisdiction over plaintiff's complaint as supplemented.

The undersigned also notes a second, more substantive (though not legally dispositive), facet of this case that reinforces the application of Rooker-Feldman here.  Leaving aside the supplemental pleading, plaintiff's original complaint—although filed before the probate court's final judgment—does challenge final orders of the probate court.  For example, plaintiff claims the "Probate Court Order" on February 19, 2019, was "[d]etrimental to [her]" because Judge

1    Winn ordered her to transfer the Trust property back to the Trust and ordered the property

2    appraised after allowing "illegal" expert witness testimony and "illegal exhibit evidence."  (ECF

3    No. 1 at 24-25 (¶ 100).)  She further describes as "[d]etrimental to [herself]" Judge Winn's March

4    7, 2019 order for the clerk of the Superior Court to sign as an elisor the grant deed transferring the

5    property back to the Trust, after plaintiff refused to do so herself.  (Id. at 26 (¶ 107).)  The clerk of

6    court signed the grant deed immediately, and the deed was recorded on March 12, 2019, giving

7    final effect to the probate court's February 19 and March 7, 2019 orders.  (ECF No. 1 at 74-75.)

8         Plaintiff notes in her motion to supplement that she "hopes [the fact that her complaint

9    was filed in federal court before the final probate court judgment] dispels the belief that [her]

10   attempt was to circumvent the ruling by [the] probate court."  (ECF No. 36.1 at 10.)  It does not.

11   The original complaint was clearly challenging at least the above two adverse orders and aimed to

12   stop the probate proceedings from yielding further detrimental orders.  (See ECF No. 1 at 35

13   (seeking preliminary injunction to prohibit the "illicit conduct described [in the complaint]").)

14   The fact that plaintiff saw the writing on the wall and filed suit here before these orders were

15   recounted in the Order After Trial should not allow this court to review the probate court's

16   conclusion that plaintiff improperly retitled the home as her own personal property.  (See ECF

17   No. 1 ¶ 23 (noting that "it appears [the probate court action] will end in favor [of defendant

18   Josiah] . . . because of the many unproven allegations and charges . . . .").)  Thus, even plaintiff's

19   original complaint can be read to implicate the Rooker-Feldman doctrine.  See Benavidez v. Cty.

20   of San Diego, 993 F.3d 1134, 1142 (9th Cir. 2021) ("The Rooker-Feldman doctrine bars lower

21   federal courts from exercising jurisdiction 'to review the final determinations of a state court in

22   judicial proceedings.'" (quoting Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1029

23   (9th Cir. 2001)).

24        The court therefore proceeds to the heart of the Rooker-Feldman analysis, looking first for

25   any de facto appeals, and then for any issues inextricably intertwined with issues resolved in a de

26   facto appeal.

27   ///

28   ///

19

1        2.   Plaintiff's Claims for General Injunctive Relief Are De Facto Appeals

2           A de facto appeal exists under Rooker-Feldman if "the plaintiff in federal district court

3    [1] complains of a legal wrong allegedly committed by the state court, and [2] seeks relief from

4    the judgment of that court."  Noel, 341 F.3d at 1163.  That is, "Rooker-Feldman . . . applies only

5    when the federal plaintiff both [1] asserts as her injury legal error or errors by the state court and

6    [2] seeks as her remedy relief from the state court judgment."  Kougasian, 359 F.3d at 1140.  In

7    identifying any de facto appeal, the court looks at each claim individually.  See Henrichs v.

8    Valley View Dev., 474 F.3d 609, 611, 613 (9th Cir. 2007).  "To determine whether an action

9    functions as a de facto appeal, [courts] 'pay close attention to the *relief* sought by the federal-

10   court plaintiff.'"  Cooper v. Ramos, 704 F.3d 772, 777-78 (9th Cir. 2012) (quoting Bianchi v.

11   Rylaarsdam, 334 F.3d 895, 900 (9th Cir. 2003)).  Accordingly, the undersigned begins by

12   analyzing plaintiff's two claims for general injunctive relief: her requests to (1) enjoin the "illicit

13   conduct" in the probate court litigation and (2) to remain in the residence without costs

14   attached.[13]  (ECF No. 1 at 35.)  See Henrichs, 474 F.3d at 614-16 (separately analyzing

15   "declaratory relief claim," damages claim, "indemnity claim," and "injunction claim").

16           Both elements of a de facto appeal are present in these claims for injunctive relief.  The

17   analysis is not quite as clear-cut in this case as in some because plaintiff alleges that her

18   injuries—only vaguely described—were caused *both* by the purportedly wrongful rulings of

19   Judge Winn in the probate matter *and* by defendants' filing of the allegedly fraudulent probate

20   petition and alleged misconduct and misrepresentations during the probate proceedings.  The

21   source of plaintiff's claimed injuries is important because "where the federal plaintiff does not

22   complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by

23   ////

24

25   _____

     [13] Because the probate proceedings are now concluded, the claims in the original complaint
26   directed at preventing either the probate court or defendants from taking further actions in the
     probate case are now moot.  However, considering plaintiff's supplemental claim for relief—that
27   she be allowed to remain in the subject residence without costs imposed by the court—the
     undersigned understands plaintiff to be requesting that this court address the ongoing
28   consequences of the probate proceeding that she maintains was conducted fraudulently.

1    an adverse party, <u>Rooker-Feldman</u> does not bar jurisdiction." <u>Noel</u>, 341 F.3d at 1163; <u>see</u>

2    <u>Benavidez</u>, 993 F.3d at 1142.

3          The "most useful" formulation of this source-of-injury question asks: "is the federal

4    plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit

5    one that denies a legal conclusion that a state court has reached in a case to which he was a party?

6    If the former, then the district court lacks jurisdiction . . . ." <u>Noel</u>, 341 F.3d at 1164 (quoting

7    <u>GASH Associates v. Village of Rosemont</u>, 995 F.2d 726, 728 (7th Cir. 1993)).  The Ninth Circuit

8    in <u>Noel</u> also quoted with approval the Seventh Circuit's reasoning in <u>GASH</u> that the plaintiff

9    (GASH) was complaining of an injury caused by a prior state-court judgment because it "did not

10   suffer an injury out of court and then fail to get relief from state court; its injury came from the

11   [state court] judgment . . . ." <u>Id.</u> at 1164-65 (quoting <u>GASH</u>, 995 F.2d at 729) (alterations in

12   <u>Noel</u>).

13         The reasoning in <u>GASH</u> applies neatly here to clarify that the source of plaintiff's claimed

14   injuries is the state-court judgment.  Plaintiff's only identifiable injuries are injuries she suffered

15   in court, during the probate petition proceedings.  (<u>See, e.g.</u>, ECF No. 1 ¶¶ 56, 82 (claiming

16   "major duress" because probate court required her to complete accountings throughout probate

17   suit "with no evidence of any wrong doing [sic]" on her part); <u>id.</u> ¶¶ 90, 93-94, 97 (probate court

18   allowed "illegal" new evidence and testimony at first trial day); <u>id.</u> ¶¶ 100, 107, 113

19   ("detrimental" probate court orders for plaintiff to transfer Trust property back to Trust and to

20   have property appraised, after hearing "illegal" evidence, and then ordering property transferred

21   by elisor; <u>id.</u> ¶¶ 105-06, 108-09 (describing as "detrimental to Plaintiff" and "cause for great

22   mental duress" probate court's failure to address her motion to vacate at February 19th status

23   conference, subsequent decision to deny her motions to vacate and for reconsideration); <u>id.</u>

24   ¶¶ 126-27 (being "falsely accused" for 19 months "without having to prove the original Petition"

25   which "continues to not be proven").)  As in <u>GASH</u>, plaintiff asserts no out-of-court injury at

26   defendants' hands for which she was seeking relief in the probate court proceeding.  <u>See</u> 995 F.2d

27   at 729.  Instead, her injuries came from the probate court proceeding itself.

28         The original injunctive relief plaintiff sought is worded just as vaguely as the injuries she

alleges. She asks the court to "prohibit the illicit conduct described herein" (referring to the complaint). (ECF No. 1 ¶ 142.) The conduct described in the complaint encompasses adverse actions by both defendants and the probate court. Indeed, plaintiff alleges at several points that defendants and the probate court were acting in concert to remove her as co-trustee. (See ECF No. 1 at 10 (heading that reads "RICO Defendants Act in Concert with Defendant's attorney and probate court To Defraud Plaintiffs"); id. ¶ 57 (stating that probate court is "known for its racketeering practices"); id. ¶ 125 (alleging that defendants "conspired with" the probate court and defendants' probate attorney "to strong arm the trust property away" from her); id. at 31 (alleging extortion plan between defendants, their probate attorney, and the probate court to "illegally obtain trust property from plaintiff").) As supplemented, the complaint also seeks relief from the court's order that the residence is Trust property for which plaintiff owes rent while she continues to live there. (ECF No. 36.1 at 11.) Accordingly, plaintiff's requests for injunctive relief must be read as asking this court to "prohibit" the probate court's removal of plaintiff as co-trustee and to undo its imposition of rental costs.

These court-imposed injuries were caused by the probate court's alleged legal errors in reviewing the evidence submitted in the probate case. See Noel, 341 F.3d at 1164 (Rooker-Feldman bar applies only when the "federal plaintiff [is] complaining of legal injury caused by a state court judgment because of a legal error committed by the state court"). The core refrain repeated throughout plaintiff's complaint is that her ownership in the Trust property was removed without defendant Josiah (the petitioner in the probate suit) having to prove the allegations in the probate petition. (See ECF No. 1 ¶¶ 10, 23, 54 (fraudulent petition containing "false and unproven" allegations); id. ¶¶ 59, 63, 68 (Josiah's inability to prove or provide "any form of evidence" for her allegations); id. ¶¶ 115-17 (Judge Winn would not discuss why he did not require Josiah to "prove" her petition); id. ¶¶ 126-27 (being falsely accused for 19 months "without having to prove the original Petition," which "continues to not be proven"); ECF No. 36.1 at 2 (¶ 4) (objecting to her name being taken off the title "without support of any proof of what occurred").) Plaintiff's main contention is that because her sister allegedly verbally consented to plaintiff's August 2015 retitling of the property from the Trust to herself and her

1    husband, that August 2015 conveyance did not constitute a breach of fiduciary duty or any other

2    sort of misconduct.  (See ECF No. 1 ¶¶ 15, 23, 43, 49, 129.)

3          These allegations necessarily challenge the correctness of the probate court's legal

4    decisions ordering the residence conveyed back to the Trust and plaintiff removed as co-trustee.

5    As recognized by the California Court of Appeal, the probate court "implied[ly] [found] that

6    [plaintiff] breached her fiduciary duties and engaged in self-dealing by transferring title of the

7    home from the Trust to herself (and her husband) and occupying the home for several years

8    without paying rent to the Trust."  Josiah, 2020 WL 6156418 at *3.  A key reason the probate

9    court so found was its explicit rejection on the first day of trial of "Jackson's claim that there was

10   an agreement to allow Jackson to transfer title of the home from the Trust to Jackson and her

11   husband."  Id. at *2.  (See ECF No. 38 at 20 (Order After Trial) ("Based upon the testimony

12   presented at trial, it was abundantly clear that [defendant Josiah] never made any oral or written

13   representation that she was giving up her interest in the 65th Avenue home to her sister.").)  The

14   foundation of plaintiff's federal complaint is, thus, the same argument she already unsuccessfully

15   made to the California Court of Appeal:  that "the evidence [presented to the probate court] does

16   not support a finding that her conduct breached any fiduciary duties or caused any personal

17   damages to Josiah."  Josiah, 2020 WL 6156418 at *3.

18         These facts make plaintiff's claims for injunctive relief a de facto appeal of the probate

19   court's judgment, even though she also asserts that wrongdoing by defendants contributed to that

20   judgment.  The Ninth Circuit's reasoning in Henrichs maps squarely onto the present case:

21             As framed by [plaintiff], [defendant Jackson] possess[es] [sole
22             trustee-ship of the Trust property, including the residence] only
                because the state court erred in awarding [her] that [sole trustee-ship]
23             in the first place. Without the state court judgment, [defendants]
                would not have caused injury to [plaintiff] at all.  Granting the
24             injunction would require [this] district court to determine that the
                state court's decision was wrong and thus void.
25

26   ////

27   ////

28

                                            23

1  474 F.3d at 616 (concluding that Rooker-Feldman barred plaintiff's injunction claim).  By

2  seeking to enjoin the probate court's orders, plaintiff necessarily asks this court to set aside the

3  probate court's judgment, depriving the court of subject-matter jurisdiction.  Noel, 341 F.3d at

4  1164; GASH, 995 F.2d at 729.

5        Plaintiff's desire to set aside the probate court's judgment is even more clearly evident in

6  her supplemental claim for relief, requesting to "remain in the trust property residence without

7  any cost attached by the courts."  (ECF No. 36.1 at 11.)  As discussed above, the "costs"

8  complained of were "attached" by the probate court in its final Order After Trial.  (ECF No. 38

9  at 22-23 (ordering that rent costs and credit continue to accrue while plaintiff occupies the home,

10  an $850 net monthly obligation).)  Granting plaintiff's request to eliminate those costs would

11  require holding, at a minimum, that the residence is not Trust property and thereby reversing the

12  probate court's judgment.  Thus, plaintiff plainly "seeks as her remedy relief from the state court

13  judgment," satisfying the second element of a de facto appeal.  See Kougasian, 359 F.3d at 1140.

14        *a.  Extrinsic Fraud Exception Does Not Apply*

15        Neither party addresses the extrinsic fraud exception to the Rooker-Feldman doctrine, but

16  in recognition of plaintiff's pro se status, the court explains why that exception does not apply in

17  this case.  The Ninth Circuit explained this exception in a decision that came out three days

18  before defendants filed their reply brief:  "where a party alleges extrinsic fraud by an adverse

19  party in procuring a state court judgment, the Rooker-Feldman doctrine does not apply, because

20  such a claim does not challenge the state court decision directly."  Benavidez v. Cty. of San

21  Diego, 993 F.3d 1134, 1143 (9th Cir. 2021); see Kougasian, 359 F.3d at 1140-41 ("A plaintiff

22  alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or

23  she is alleging a wrongful act by the adverse party.").

24        Plaintiff's complaint is full of claims that defendants committed fraud in the probate

25  proceedings, starting with the very filing of the probate petition itself.  However, none of the

26  alleged instances of fraud contributing to the probate court's orders qualifies as "extrinsic" fraud

27  that would avoid the Rooker-Feldman bar.  "Extrinsic fraud is conduct which prevents a party

28  from presenting [her] claim in court."  Kougasian, 359 F.3d at 1140 (quoting Wood v. McEwen,

644 F.2d 797, 801 (9th Cir. 1981)).  To qualify as extrinsic, the alleged fraud must be "collateral

to the matters involved in the action."  See Green v. Ancora-Citronelle Corp., 577 F.2d 1380,

1384 (9th Cir. 1978).  By contrast, "intrinsic" fraud "goes to the very heart of the issues contested

in the state court action."  Id.

    Construed liberally, plaintiff's complaint arguably alleges fraud by defendants in:

    a)  Filing the "untrue" probate petition and fraudulently verifying its veracity (ECF
        No. 1 ¶¶ 9-15, 57, 123);

    b)  Allowing their attorney in the body of the probate petition to mischaracterize the
        nature of a loan plaintiff took on the residence (id. ¶¶ 76-79);

    c)  Presenting different evidentiary exhibits at the first day of trial, without prior
        notice to plaintiff, amounting to "illegal evidence" (id. ¶¶ 88-99);

    d)  Misrepresenting that plaintiff put her name on the mortgage (ECF No. 36.1 at 2
        (¶ 3)); and

    e)  Putting on evidence that the Trust property was transferred out of the Trust,
        despite knowing that this never happened (ECF No. 1 ¶¶ 113-14).

None of these alleged actions amount to extrinsic fraud.  At best, plaintiff alleges intrinsic fraud.

    With the exception of (c), all of these acts go to the core of the dispute in the probate

petition proceeding.  The facts alleged in the probate petition were, of course, the primary subject

of the probate case.  Statements and evidence made to the court regarding the titling and transfer

of the Trust property were, likewise, central to the petition, which rested on plaintiff's original

conveyance to herself.  Moreover, none of these alleged acts—including the non-noticed trial

exhibits in (c)—prevented plaintiff from raising her fraud-related claims or objections to defend

against the petition in probate court.  Cf. Kougasian, 359 F.3d at 1140 ("Extrinsic fraud is

conduct which prevents a party from presenting [her] claim in court."); Lewis v. L.A. Metro.

Transit Auth., No. CV-19-1456-PSG-JPRx, 2019 WL 6448944, at *3-4 (C.D. Cal. Sept. 10,

2019) (because the allegedly fraudulent actions "would have merely weakened Plaintiff's case,

rather than prevented him from getting into court at all," plaintiff at best alleged intrinsic fraud, so

Rooker-Feldman bar applied (cleaned up)).  Plaintiff undoubtedly had the "opportunity to

1   challenge" the petition's allegations, the alleged mischaracterizations, and the purported

2   procedural violations during the probate proceedings—and in her multiple appeals, for that

3   matter.  Cf. Benavidez, 993 F.3d at 1141, 1143-44 (extrinsic fraud corollary to Rooker-Feldman

4   applied because plaintiff parents "had no opportunity to challenge" state court orders related to

5   medical examinations of their minor children, which were based on defendants'

6   misrepresentations to the court, where the parents did not know the exams took place until after

7   they happened).

8          Thus, no extrinsic fraud exception applies, and plaintiff's complaint is "at least in part a

9   forbidden de facto appeal of a state court judgment." Noel, 341 F.3d at 1165.

10         3.   Plaintiff's RICO Claims Are Inextricably Intertwined with the Probate Court's

11              Decisions to Remove Her as Co-Trustee and Order the Property Back into the Trust

12         Next, the court considers whether plaintiff's additional claims regarding the actions of

13  Josiah and her husband are "'inextricably intertwined' with an issue resolved by the state court

14  judicial decision from which the forbidden de facto appeal is taken." Cooper, 704 F.3d at 781

15  (quoting Noel, 341 F.3d at 1165).  The term "inextricably intertwined" has "a narrow and

16  specialized meaning in the Rooker-Feldman doctrine." Kougasian, 359 F.3d at 1142. "The

17  inextricably intertwined test . . . allows courts to dismiss claims closely related to claims that are

18  themselves barred under Rooker-Feldman." Id.  Claims are inextricably intertwined with an issue

19  resolved by the state court where "the relief requested in the federal action would effectively

20  reverse the state court decision or void its ruling." Cooper, 704 F.3d at 779 (cleaned up).

21         Two of plaintiff's claims for relief are, on their face, directed exclusively at defendants

22  Josiah and her husband, as opposed to encompassing conduct by the probate court; and both arise

23  under RICO.  Plaintiff requests that this court (1) order defendants to stop violating RICO, and

24  (2) award damages "in an amount equal to three times the amount of damages" plaintiff

25  "sustained because of [defendants'] actions, plus a civil penalty for each violation of 18 U.S.C.

26  § 1964." (ECF No. 1 at 35-36.)  However, the court concludes that both of these claims are

27  inextricably intertwined with the probate court's resolution of the probate petition, and would

28  effectively reverse its judgment, if granted.

1    As to the claim to enjoin defendants from violating RICO (which plaintiff styles as a

2   request for a "declaratory judgment"), the only alleged RICO violations identified in plaintiff's

3   complaint are actions defendants (or their probate attorney) took in prosecuting the probate

4   petition.  (See, e.g., ECF No. 1 ¶ 123 ("filing the original untrue complaint"); id. ¶¶ 91-92, 96,

5   99-100 (using "illegal evidence" at first day of trial); id. ¶¶ 124, 127 (malicious prosecution by

6   filing and pursuing false claims); id. ¶¶ 131-33 (mail fraud by probate attorney sending "false and

7   incomplete" documents to plaintiff); ECF No. 36.1 at 2 (¶ 4) (mail fraud for silently participating

8   in minute order setting June 7th hearing).)  Plaintiff's prayer to enjoin these supposed RICO

9   violations, although distinct from her prayer to enjoin the court's "illicit conduct," is contingent

10  upon a finding that the probate court erroneously accepted defendants' in-court arguments and

11  representations in ruling for them on the petition.  (ECF No. 1 at 35.)  Granting the requested

12  injunction would require adopting plaintiff's position that the evidence accepted by the probate

13  court was unsound, or at least insufficient, thereby effectively undermining the probate court's

14  orders and judgment regarding the disposition of the residence.[14]  See Reiner v. Graiwer, No. CV

15  15-7577-GHK (KES), 2015 WL 9999191, at *9 (C.D. Cal. Nov. 25, 2015) ("It would be

16  impossible to find that the Opposing Counsel Defendants conspired to obstruct justice or deprived

17  Plaintiff of his civil rights . . . without undercutting" prior state court decisions rejecting the

18  plaintiff's argument).  Accordingly, the RICO injunction claim is inextricably intertwined with

19  the probate court's orders disposing of the property, which are the subject of the above-identified

20  de facto appeal.[15]  See Cooper, 704 F.3d at 779.

21

_____

22   [14]    Indeed, plaintiff explicitly connects the supposed RICO violations with the injuries

23  imposed by the probate court's orders.  (See, e.g., ECF No. 1 ¶ 100 (alleging that use of "illegal
    evidence" resulted in residence being ordered back into the Trust; ECF No. 36.1 at 2 (¶ 4)

24  (June 7th hearing set by minute order "with the outcome of hearing only to get plaintiff's name
    off the grant deed to force the sale of the Trust home without support of any proof of what

25  occurred in the hearing caused by Plaintiff['s] alleged actions.").)

26   [15]    Given that the probate petition litigation is now concluded, the RICO injunction claim is
    also moot.  The above analysis applies to the extent plaintiff's complaint as supplemented can be

27  read to contain a live claim to enjoin defendants from violating RICO through the probate court.
         In addition, plaintiff's claims for injunctive relief are also likely barred by the Anti-

28  Injunction Act, 28 U.S.C. § 2283, which precludes a federal court from granting injunctive relief

1     Plaintiff's claim for RICO damages is even more clearly inextricably intertwined with the

2     probate court's resolution of the petition.  The damages plaintiff seeks are based entirely on the

3     (unspecified) "amount of damages [she] has sustained" because of defendants' "actions."  (ECF

4     No. 1 ¶ 144.)  The only monetary damages identified in the complaint are the loss of plaintiff's

5     ownership interest in the Trust property (including the residence) and her obligation to pay rent

6     for her prior and continuing occupancy.  As discussed above, both of those injuries were directly

7     imposed by the probate court's orders and final judgment.  To award plaintiff any damages in this

8     action—much less treble damages—to compensate for her probate-court-ordered losses and debts

9     would effectively reverse the probate court decision.  See Cooper, 704 F.3d at 782 (holding that

10    plaintiff's prayer for monetary and punitive damages, although distinct from his prayer for

11    declaratory judgment, was still contingent on finding state court error); Menna v. Radmanesh,

12    No. CV 14-355-R MAN, 2014 WL 6892724, at *10 (C.D. Cal. Oct. 7, 2014) ("The relief plaintiff

13    seeks—a declaration that the judgments in the prior state actions are void *and damages to*

14    *compensate him for the loss of his tenancy*—would effectively reverse the state court decisions."

15    (emphasis added)).  Therefore, the RICO damages claim is also inextricably intertwined with the

16    probate court's orders disposing of the property.

17              *a.  Plaintiff's Counter Arguments Are Unavailing*

18    Plaintiff only briefly responds to defendants' Rooker-Feldman arguments.  Her most

19    substantive contention is that Rooker-Feldman does not bar this suit because the causes of action

20    she asserts here are not the same as those decided in the probate suit.  (ECF No. 41 at 5-6, 9.)

21    However, "unlike res judicata, the Rooker-Feldman doctrine is not limited to claims that were

22    actually decided by the state courts . . . ."  Bianchi v. Rylaarsdam, 334 F.3d 895, 901 (9th Cir.

23    2003).  And, of course, one would not expect to find plaintiff's present causes of action appearing

24    _____

25    that "effectively blocks a state court judgment."  Henrichs v. Valley View Dev., 474 F.3d 609,
      616 (9th Cir. 2007) (finding claim barred by both Rooker-Feldman and Anti-Injunction Act);

26    California v. Randtron, 284 F.3d 969, 975 (9th Cir. 2002) (Anti-Injunction Act applies even if
      injunction would be directed at a litigant instead of the state court proceeding itself).  Defendants

27    do not raise this defense, however, and since that statute is not jurisdictional, the court does not
      address it further.  See Smith v. Apple, 264 U.S. 274, 278-79 (1924) (AIA is not jurisdictional

28    statute).

in the probate proceedings because she was the respondent in that suit and her purported

racketeering claims only arose during the course of that litigation.  For the reasons discussed

above, her claims for relief in this court would require undercutting the probate court's rulings.

As such, they are <u>Rooker-Feldman</u> barred.

The court also briefly addresses an argument obliquely raised in plaintiff's opposition and

appearing in her pleadings.  (<u>See</u> ECF No. 41 at 5.)  Plaintiff seems to believe that the probate

court's statement that Probate Code § 850(a)(3)(A) did not support defendant Josiah's request to

order plaintiff to vacate the Trust property (<u>see</u> ECF No. 38 at 23) shows that defendants' petition

was fraudulent and frivolous.  (<u>See</u> ECF No. 36.1 at 3 (¶ 6).)  This belief is based on a misreading

of the probate court's order.  The probate court ordered nearly all of the relief requested by

petitioner (now defendant) Josiah, except it declined to order plaintiff to vacate the residence.

The probate court was merely stating that § 850(a)(3)(A) did not support that specific eviction

form of relief—not that the statute did not support Josiah's petition in general.

4.  <u>No Supplemental Jurisdiction Over Other State Law Claims</u>

To the extent plaintiff raises other state law claims separate from the claims for relief

addressed above, the undersigned need not address whether each of those claims is inextricably

intertwined as well.  In the absence of subject-matter jurisdiction over the federal law claims, the

court recommends that supplemental jurisdiction over the state law claims be declined.  <u>See</u>

<u>Brown v. Lucky Stores, Inc.</u>, 246 F.3d 1182, 1189 (9th Cir. 2001) ("a district court has discretion

to elect not to exercise supplemental jurisdiction over state claims if it has dismissed the federal

claims over which it had original jurisdiction").

**IV.    <u>CONCLUSION</u>**

In sum, there are no federal claims in plaintiff's complaint as supplemented over which

this court possesses subject-matter jurisdiction.  For the above reasons, it is HEREBY

RECOMMENDED that:

1.    Plaintiff's motion to supplement the complaint (ECF No. 36) be GRANTED;

2.    Plaintiff's original complaint be supplemented to add the allegations and requests for

relief identified by the undersigned in plaintiff's supporting declaration and Exhibit A;

3.      Defendants' motion to dismiss (ECF No. 37) be GRANTED;

4.      Plaintiff's complaint, as supplemented, be dismissed without leave to amend and without prejudice, for lack of federal subject-matter jurisdiction; and

5.      The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  June 14, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

jack.0671

30